UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

FIREMAN'S FUND INSURANCE CO., et al.,

                        Plaintiffs,               Civil No. CV03-25-MO

       v.

                                               OPINION AND ORDER

ED NIEMI OIL CO., INC., et al.,

                        Defendants.

**MOSMAN, J.,**

       The Oregon Environmental Cleanup Assistance Act ("ECAA") provides that an insurer who pays defense or indemnity costs or both on behalf of an insured has a right of contribution against "any other insurer that is liable or potentially liable." Or. Rev. Stat. § 465.480(4). The question currently before the court is what effect a settlement between a "liable or potentially liable" insurer and the insured that completely releases the settling insurer from further liability to the insured has on the right of contribution. Stated another way, does a complete settlement between the insured and one of its insurers extinguish the right of contribution against the settling insurer?

PAGE 1 - OPINION AND ORDER

In this case, Fireman's Fund Insurance Company ("Fireman's Fund") seeks a declaratory judgment that North Pacific Insurance Company ("North Pacific") and Oregon Auto Insurance Company ("Oregon Auto") have a duty to defend and indemnify the common underlying insured, Niemi Oil Company and its related entities (collectively referred to as "Niemi"), and therefore Fireman's Fund has a right of contribution against them under Or. Rev. Stat. § 465.480(4). North Pacific and Oregon Auto filed the motion to dismiss (# 302) presently before the court arguing that because they entered into a complete settlement with Niemi, they have satisfied their liability and therefore are not further obligated in contribution.

Whether settling with the insured impacts contribution rights depends on a statutory analysis of the ECAA. Because I find the phrase "liable or potentially liable," which limits the right of contribution, refers to an insurers liability to the insured, I conclude that settlement of all liability with the insured bars a right of contribution against the settling insurer. Therefore, because I find the settlement agreement between Niemi and its insurers, North Pacific and Oregon Auto, is enforceable, the motion to dismiss is GRANTED, and North Pacific and Oregon Auto are DISMISSED WITH PREJUDICE as parties in this case.

## Discussion

Given the numerous prior proceedings and rulings in this case, the underlying facts will not be recited.

1.)  <u>Does settlement with the insured for an insurer's total liability prevent a further contribution claim against the settling insurer?</u>

The ECAA was originally enacted in 1999 to "promot[e] the fair and efficient resolution of environmental claims while encouraging voluntary compliance and regulatory cooperation."

Or. Rev. Stat. § 465.478.  Initially, the Act provided basic definitions and some general

principles for construing insurance policies covering environmental claims.  *See* 1999 Or. Laws,

ch. 783.  In 2003, the Act was substantially amended.  One aspect of these amendments created a

new scheme for litigating allocation between potential insurers.  Before the 2003 amendments,

the insured was responsible for instigating litigation against its potential insurers and obtaining a

judgment resolving allocation before it could collect under its insurance policy(s).  This was

often a time consuming and expensive process that placed a significant burden on the insured.  In

order to protect the insured, the 2003 amendments adopted an all-sums approach and shifted the

responsibility of determining allocation from the insured to a chosen insurer(s).

    Under this new scheme, the insured must notify all of its potential insurers for which it

has contact information of its environmental claim.  However, if its claim is not fully satisfied,

the insured can opt to bring suit against only one of its potential insurers.[1]  Or. Rev. Stat.

§ 465.480(3)(b).  The named insurer must then pay all defense and indemnity costs up to its

policy limits, regardless of any other policies that may also provide coverage.  *Id.*

§§ 465.480(3)(a), (d).  To assist in carrying this burden, the Act gives the named insurer a right

_____

    [1]The insured must consider the following statutory factors in naming the insurer it will
bring suit against:

>    (A) The total period of time that an insurer issued a general liability insurance
>    policy to the insured applicable to the environmental claim;
>    (B) The policy limits, including any exclusions to coverage, of each of the general
>    liability insurance policies that provide coverage or payment for the
>    environmental claim; or
>    (C) The policy that provides the most appropriate type of coverage for the type of
>    environmental claim for which the insured is liable or potentially liable.

Or. Rev. Stat. § 465.480(3)(b).

PAGE 3 - OPINION AND ORDER

of contribution against "any other insurer that is liable or potentially liable," *id.* § 465.480(4), and requires the insured to provide information about its other potential insurance policies if requested by the named insurer. *Id.* § 465.480(3)(c).

"In interpreting a statute, the court's task is to discern the intent of the legislature." *Portland Gen. Elec. Co. ("PGE") v. Bureau of Labor & Indus.*, 859 P.2d 1143, 1145 (Or. 1993) (citing Or. Rev. Stat. § 174.020) (further citations omitted). In doing so, the starting point is the statutory text itself. *PGE*, 859 P.2d at 1146. Here, it is clear from the statutory text that "liable or potentially liable" limits the class of insurers against whom a right of contribution exists. Or. Rev. Stat. § 465.480(4). "Liable" or "liability" are not defined terms. Likewise, the right of contribution is not defined or further explained. Thus, in construing these terms, the court considers their ordinary meaning as well as pre-existing law, including common law. *McIntire v. Forbes*, 909 P.2d 846, 849 (Or. 1996); *Magee v. All Terrain Contractors, Inc.*, 926 P.2d 323, 326 (Or. Ct. App. 1996).

As a general matter, "contribution" is defined as "'a payment of an individual's share in a loss for which several are jointly liable.'" *Guild v. Baune*, 115 P.3d 249, 253 (Or. Ct. App. 2005) (quoting *Webster's Third New Int'l Dictionary*, 496 (unabr. ed. 2002). Similarly, the legal understanding of "contribution" is "the right of a person who has *discharged a common liability* or burden to recover of another, who is also liable, the portion he or she ought to pay or bear." *Id.* at 253 (quoting 18 Am. Jur. 2d *Contribution* § 1 (2004)); *see also Black's Law Dictionary* 266 (abr. 7th ed. 2000) (contribution is "the right to demand that another who is jointly responsible for a third party's injury supply part of what is required to compensate the third party"). Oregon's statute providing a right of contribution in the context of tort liability

specifically states:

> [W]here two or more persons become jointly or severally liable in tort for the same injury . . . there is a right of contribution among them even though judgment has not been recovered against all or any of them. There is no right of contribution from a person who is not liable in tort to the claimant.

Or. Rev. Stat. § 31.800(1).  In construing this provision, Oregon courts have consistently held a right of contribution exists only where there is joint and several liability between the parties to the contribution action *for the underlying harm.  Beaver v. Pelett*, 705 P.2d 1149, 1150-51 (Or. 1985) (en banc); *Fujitsu Microelectronics, Inc. v. Lam Research Corp.*, 27 P.3d 493, 495-96 (Or. Ct. App. 2001); *Mitchell v. Sherwood*, 985 P.2d 870, 872 (Or. Ct. App. 1999).

All of these authorities indicate that even though the legislature did not define liability in the context of the limiting phrase "liable or potentially liable" in the ECAA, it meant "liable or potentially liable *to the insured*."  And if this is true, it seems that, as North Pacific and Oregon Auto contend, where an insurer settles with the insured and receives a complete release of further liability, the settling insurer is no longer subject to contribution because it is no longer "liable or potentially liable."

The Act does not directly address what effect, if any, settlement with the insured has on the settling insurer's obligation in contribution under the 2003 amendments.  However, as Fireman's Fund points out, it does address the effect of settlements entered into prior to the 2003 amendments, stating:

> (4) Notwithstanding any other provision of law, an insurer that is a party to an action based on an environmental claim for which a final judgment as to all insurers has not been entered by the trial court on or before the effective date of this 2003 Act and in which a binding settlement has been reached on or before the effective date of this 2003 Act between the insured and at least one insurer that was a party to the action may not seek or obtain contribution from or allocation to:

PAGE 5 - OPINION AND ORDER

(a)     The insured; or
(b)     Any other insurer that prior to the effective date of
        this 2003 Act reached a binding settlement with the
        insured as to the environmental claim.

2003 Or. Laws, ch. 799, § 5(4) (hereinafter referred to as "the sessions law").  To begin with,

North Pacific and Oregon Auto argue the court should not consider this provision because it was

not included in the Oregon Revised Statutes and therefore was not enacted.  This is in error.  It is

clear from the sessions law this provision was enacted along with the other 2003 amendments.

*See* Or. Laws, ch. 799.  The Legislative Counsel, which compiles the Oregon Revised Statutes,

often regards effective-date clauses of a newly enacted measure as  "temporary section[s]," and

thus does not include them in the codified statute.  *McCoy v. Dept. of Revenue*, 6 Or. Tax 116,

123 (Or. T.C. 1975); *see also Owens v. Maass*, 918 P.2d 808, 810 n.5 (Or. 1996) (addressing

enacted but uncodified effective date provision).  That this provision is an effective-date clause

is clear from its express language, as well as the other subsections in section five of the sessions

law.[2]  Further, in addition to discerning legislative intent based on the statutory text, Oregon

---

[2] The remainder of section five reads as follows:

(1) Except as provided in subsections (2), (3) and (4) of this section, section 4 of
this 2003 Act and the amendments to ORS 465.475 and 465.480 by sections 1 and
2 of this 2003 Act apply to all claims, whether arising before, on or after the
effective date of this 2003 Act.
(2) Section 4 of this 2003 Act and the amendments to ORS 465.475 and 465.480
by sections 1 and 2 of this 2003 Act do not apply to any claim for which a final
judgment, after exhaustion of all appeals, was entered before the effective date of
this 2003 Act.
(3) Nothing in section 4 of this 2003 Act or the amendments to ORS 465.475 and
465.480 by sections 1 and 2 of this 2003 Act may be construed to require the
retrying of any finding of fact made by a jury in a trial of an action based on an
environmental claim that was conducted before the effective date of this 2003
Act.

PAGE 6 - OPINION AND ORDER

courts have routinely instructed that courts should also consider the statutory *context*, including

the sessions laws. *Stevens v. Czerniak*, 84 P.3d 140, 144-45 (Or. 2004). Thus, the sessions law

is properly considered in this case.

Fireman's Fund argues the sessions law creates an inference that settlements entered into

after the effective date of the 2003 amendments do not bar contribution rights. The argument is

as follows: by specifying settlements entered into before the 2003 amendments bar contribution,

the legislature, by implication, also indicated that settlements occurring after the amendments

were enacted do not bar contribution. In the abstract, this may be a reasonable implication to

draw. However, if interpreted this way, the sessions law and Or. Rev. Stat. 465.480(4) limiting

contribution against those insurers who are "liable or potentially liable" to the insured are in

direct conflict.

As a matter of statutory construction, where there are multiple provisions at issue, the

court should, if possible, adopt a construction that gives effect to each provision. Or. Rev. Stat.

§ 174.010; *PGE*, 859 P.2d at 1146. However, where a conflict is unavoidable, specific

provisions control more general provisions. Or. Rev. Stat. § 174.020(2); *PGE*, 859 P.2d at 1146.

Fireman's Fund asserts one way to reconcile the two provisions is to construe "liable or

potentially liable" as applying only to a specific instance in time. For example, whether an

insurer is "liable or potentially liable," and thus subject to contribution, is determined at the time

of the environmental damage, or at the time the insured files suit against the named insurer for

environmental coverage,[3] and any subsequent events seemingly impacting liability, like

---

[3]Exactly what moment in time Fireman's Fund advances as the appropriate benchmark is
unclear.

settlement, have no impact on contribution.

To begin with, nothing in the ECAA suggests this is what the legislature intended. Presumably if the legislature had intended such a temporal limitation it could have easily so stated. Further, construing § 465.480(4) in this way undermines general public policy favoring settlement. *See generally Holger v. Irish*, 851 P.2d 1122, 1133 (Or. 1993); *Knutson v. Yamhill County*, 881 P.2d 156, 159 (Or. Ct. App. 1994). If Fireman's Fund is correct, then no other insurer has any incentive to settle with the insured, since it will remain liable in contribution in spite of any settlement. The scheme Fireman's Fund envisions allows the named insurer to force potentially less liable insurers, *see* Or. Rev. Stat. § 465.480(3)(b), to stay in the case until the bitter end, when contribution is finally determined, despite their willingness to enter a full settlement of all claims with the insured.

In addition, where a statute employs a common law term, it is interpreted in light of its common law meaning unless the legislature indicates a contrary intent. *State v. Tauscher*, 360 P.2d 764, 768 (Or. 1961). As a general matter, settlement with the party to whom the common obligation is owed bars contribution. *See, e.g.,* 18 Am. Jur. 2d *Contribution* § 87 (2005) ("A good-faith settlement between the original plaintiff and a defendant bars any nonsettling defendants from seeking contribution from the settling defendant."). Oregon has codified this principle in relation to joint tortfeasors. Or. Rev. Stat. § 31.815(1)(b). There is no clear indication in the ECAA that a different rule should apply in this context. And even though the sessions law seems to suggest settlement has no impact on contribution rights, I am unwilling to establish such a result in conflict with general common law and public policy without a clearer indication from the legislature that this is what it intended. A negative inference from an

PAGE 8 - OPINION AND ORDER

effective-date provision defining the retroactive limits of the 2003 amendments is simply insufficient.

Also instructive in rejecting Fireman's Fund's temporal limitation argument is the fact that Oregon courts have previously rejected similar arguments in relation to contribution rights, explaining contribution does not exist where the underlying injured party is legally prevented from recovering damages against the party from whom contribution is sought, no matter when the legal bar arose. *See Beaver*, 705 P.2d at 1152-53 (holding "liable in tort" not finally determined at time of injury and subsequent failure to provide required notice of claim defeated liability and contribution); *Mitchell*, 985 P.2d at 871-73 (same); *see also Fujitsu Microelectronics,* 27 P.3d at 496 ("[N]either [*Beaver* or *Mitchell*] distinguished between liability as an abstract concept and the right to recover damages.  In other words, even if the state *was negligent* for causing plaintiff's injuries, it *was not liable in tort* . . . because any right of recovery was barred by the plaintiff's failure to comply with the notice requirements . . . ."). Here, the settlement between North Pacific and Oregon Auto and Niemi completely resolves the insurers' liability and Niemi is indisputably barred from seeking further recovery from them. Thus, in the words of the statute, the insurers are no longer "liable or potentially liable" to Niemi. For all of these reasons, I assume the legislature did not intend the type of temporal limitation urged by Fireman's Fund as it did not include such a provision or a clear indication of such a provision in the text of the ECAA.

Of course, regardless of any temporal-limitation, there is nothing clearly establishing the legislature intended the inference suggested by Fireman's Fund.  Taken as a whole, the sessions law addresses the extent the 2003 amendments apply retroactively.  Thus, it could be the

PAGE 9 - OPINION AND ORDER

legislature included the language at issue solely to clarify what the provision expressly states–that pre-2003 amendment settlements will not be disturbed–without saying anything about later-occurring settlements.

Fireman's Fund's primary argument against construing the statute to allow settlement to terminate contribution rights is that this result would undermine the statutory right of contribution given to the named insurer by allowing someone else–the insured–to bargain it away. Essentially, Fireman's Fund asserts that if insurers can avoid contribution by settling with the insured the named insurer is left between a rock and a hard place. Unquestionably, Fireman's Fund is in an undesirable position. However, as the Oregon Court of Appeals noted in another case where the plaintiff's right to contribution was defeated by a contract to which it was not a party, where the statutory text dictates such a result, "[i]f redress is needed, it should be addressed to the legislature." *Fujitsu Microelectronics,* 27 P.3d at 497 n.4. Here, the legislature did not directly address the effect of post-2003 amendment settlements. But, in creating the right of contribution, the legislature did expressly provide that such a right only exists against those insurers who have outstanding liability to the insured. Even though Fireman's Fund's asserted implication may be reasonable, it is not appropriate to resolve a statutory conflict between a provision clearly applicable to the case at hand in favor of one that is only applicable by implication, if at all. I am simply not at liberty to avoid the import of the legislature's express words. Or. Rev. Stat. § 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted . . . ."). Nor is there anything particularly unusual about the "rock and a hard place" for a party seeking contribution. As

PAGE 10 - OPINION AND ORDER

shown above, a joint tortfeasor can lose its right of contribution when another joint tortfeasor settles with the plaintiff.

Thus, given the specific, limited focus of the sessions law provision and § 465.480(4)'s language creating the right of contribution, I conclude the latter controls this case. The legislature defined the right of contribution as existing only against other insurers with liability to the insured. Where an insurer settles its complete liability with the insured, it is no longer "liable or potentially liable," and therefore, it is no longer subject to a right of contribution. Here, North Pacific and Oregon Auto settled with Niemi for their total liability. Thus, if the settlement agreement is enforceable, the motion to dismiss must be granted.

2.      Is the settlement agreement enforceable?

As stated above, settlement agreements are generally favored. As such, they are enforceable so long as they are entered in good faith. *G.F. Hodges Agency v. Rees,* 272 P.2d 216, 224 (Or. 1954) ("The law favors voluntary settlements of controversies between the parties, which are characterized by good faith and a full disclosure of all the facts. And such settlements will be upheld and enforced . . . .") (internal quotation marks and citations omitted); *see also* 18 Am Jur. 2d. *Contribution* § 87 (2005). Here, Fireman's Fund argues the amount and timing of the settlement indicate it was not entered in good faith. More generally, Fireman's Fund argues the settlement was not entered in good faith because it is based on having Fireman's Fund pay more than its fair share to Niemi. Taking this second contention first, the Oregon Court of Appeals recently reiterated that under Oregon law, a general liability insurer is liable to its insured for the full amount of its policy regardless of whether or not there are other insurers who are also liable. *Cascade Corp. v. Am. Home Assur. Co.*, __ P.3d __, 2006 WL 1330823 (Or. Ct.

PAGE 11 - OPINION AND ORDER

App. May 17, 2006) (discussing cases).  The *Cascade* Court reasoned that the presence of other insurers to a potential liability was merely fortuitous, allowing a potential "windfall" to any particular insured, but creating no unfairness if it remains liable up to the limits of its policy.  *Id.* at *3.  Thus, regardless of the settlement amount, Fireman's Fund will never be required to pay more than its fair share as long as it pays no more than its policy limit.

Regarding the settlement amount, whether North Pacific and Oregon Auto would have been found liable to Niemi is far from clear.  Unlike Fireman's Fund, these insurers' liability must be established based on policies that have since been lost.  And even though the ECAA provides a mechanism for addressing this situation, *see* Or. Rev. Stat. § 465.479, it is unclear whether the evidence in this case is sufficient to establish the terms of the lost policies.  The difficulty of this issue is apparent in light of the prior proceedings in this case.  Indeed, this precise issue has been the primary subject of the litigation thus far, including numerous summary judgment motions and multiple rulings from the court.  Under these circumstances, the amount of the parties' settlement is not unreasonable.

As to the timing of the settlement, it is true it was entered into just before trial was scheduled to begin.  However, this is not uncommon.  Parties often wait until trial is imminent or even underway before they settle.  I see nothing in particular about the timing here to suggest the parties acted in bad faith.

In conclusion, I find North Pacific's and Oregon Auto's settlement agreement with Niemi was entered into in good faith and is enforceable.  Under the terms of the settlement, the insurers are no longer "liable or potentially liable" to Niemi.  Therefore, North Pacific and Oregon Auto are no longer subject to contribution under the ECAA, and the motion to dismiss (#302) is

GRANTED.  North Pacific and Oregon Auto are DISMISSED WITH PREJUDICE as parties

from this case.

DATED this ____6th____ day of June, 2006.


                                    /s/ Michael W Mosman
                                    MICHAEL W. MOSMAN
                                    United States District Court