IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**FIREMAN'S FUND INSURANCE CO.**,

                  Plaintiff,

    v.

**OREGON AUTOMOBILE INSURANCE
CO.**, and **NORTH PACIFIC INSURANCE CO.**,

                  Defendants.

No. CV 03-0025-MO

OPINION AND ORDER

**MOSMAN, J.,**

## BACKGROUND

Following seven years of litigation regarding their respective duties to defend—including twelve separate motions for full or partial summary judgment, two pretrial conferences, a trip to the Ninth Circuit, and a four-day court trial—plaintiffs National Surety Corporation and Fireman's Fund Insurance Co. (together, "Fireman's Fund") seek attorney fees and costs from defendants Oregon Automobile Insurance Co. and North Pacific Insurance Co. (together, "North Pacific") pursuant to Oregon Revised Statute ("ORS") section 742.061(1). (*See* Pls.' Bill of Costs (#531); Pls.' Mot. for Att'y Fees (#532).) I will not belabor the history of this case, but I agree with Fireman's Fund's characterization of the litigation as involving novel legal questions, complex legal issues, voluminous evidence, substantial expert analysis, and aggressive litigation

PAGE 1 - OPINION AND ORDER

by defendants. Fireman's Fund ultimately succeeded on most of its claims and I found that North Pacific owed a duty to contribute to the defense of the insureds, to the tune of roughly $2 million for past defense costs as well as a portion of future defense costs for two of the six sites at issue. (*See* Am. Findings of Fact & Conclusions of Law (#522).)

Fireman's Fund filed its Motion for Attorney Fees and Bill of Costs with this Court on April 27, 2010. (*See* (#531, 532).) In the motion for fees, Fireman's Fund relies on ORS section 742.061(1), which provides for a mandatory fee award to the prevailing party in an insurance dispute if certain circumstances are met. (Pls.' Mem. in Supp. (#533) 2.) Fireman's Fund argues that the statute applies to a liability insurer suing another liability insurer for contribution, relying on *Webb v. National Union Fire Insurance Co.*, 207 F.3d 579, 584 (9th Cir. 2000), as the Oregon Supreme Court or Oregon Court of Appeals had not yet spoken on the issue.

In what appears to be a stroke of unfortunate luck for plaintiffs, the Oregon Court of Appeals issued an opinion on April 28, 2010, holding "it is readily apparent that an equitable contribution action is not the type of action for which the legislature intended to extend a right of attorney fees [under ORS 742.061(1)]." *Certain Underwriters at Lloyd's London v. Mass. Bonding & Ins. Co.*, 230 P.3d 103, 117 (Or. Ct. App. 2010) ("*Underwriters*"). Plaintiffs acknowledge that *Underwriters* "holds that ORS 742.061(1), the attorneys' fees statute upon which FFIC relies, does not apply to contribution claims between insurers," but contends that this Court is nevertheless bound to follow the Ninth Circuit's ruling in *Webb*. (*See* Pls.' Mot. to Cite Add'l Decision (#542) 2-3.) The initial dispute in this motion for attorney fees, then, is which ruling this Court is bound to follow regarding interpretation of a state statute—the Ninth Circuit's holding in *Webb* or the Oregon Court of Appeals's holding in *Underwriters*.

PAGE 2 - OPINION AND ORDER

## DISCUSSION

North Pacific recites the well-known principle "that a federal court applying Oregon substantive law should follow the decisions of Oregon's Court of Appeals absent convincing evidence that the Oregon Supreme Court would decide the matter differently." (Defs.' Resp. (#555) 2-3 (citing *Munson v. Del Taco, Inc.*, 522 F.3d 997, 1002-03 (9th Cir. 2008) and other cases).) Indeed, this Court recently explained:

> When interpreting state law, district courts are bound by a decision from the highest state court. *In re Kirkland*, 915 F.2d 1236, 1238-39 (9th Cir. 1990). In the absence of such a decision, the federal court must predict how the state supreme court would decide the issue, using appellate court decisions as instructive. *Id.* "[I]n the absence of convincing evidence that the highest court of the state would decide differently, . . . a federal court is obligated to follow the decisions of the state's intermediate courts." *Id.* at 1239 (quoting *Am. Triticale, Inc. v. Nytco Servs., Inc.*, 664 F.2d 1136, 1143 (9th Cir. 1981)).

*In re Helicopter Crash Near Weaverville, CA 8/5/08*, Nos. 09-md-2053-MO, 09-cv-705-MO, 2010 WL 1994907, at *4 (D. Or. May 18, 2010). Fireman's Fund advances two arguments—first, it argues that this "rule does not apply here"; second, it alternatively contends that the Oregon Supreme Court would likely hold that ORS 742.061(1) applies to its statutory contribution claim. (*See* Pls.' Reply (#562) 3-4.)

## I.    **Which Decision Binds This Court?**

Fireman's Fund argues that "[t]his is not the usual case where the district court is simply deciding whether to follow a state appellate court ruling." (Pls.' Reply (#562) 4.) It contends that this Court is bound by Ninth Circuit precedent, even in light of a contrary ruling from the Oregon Court of Appeals, primarily relying on *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003). *Miller* examined "when, if ever, a district court or a three-judge panel is free to reexamine the holding of

PAGE 3 - OPINION AND ORDER

a prior panel in light of an inconsistent decision by a court of last resort on a closely related, but

not identical issue." 335 F.3d at 899. The Ninth Circuit held "that in circumstances like those

presented here, where the reasoning or theory of our prior circuit authority is clearly

irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel . .

. should reject the prior circuit opinion as having been effectively overruled." *Id.* at 893. This

holding also extends to district courts that similarly face conflicting authority. *United States v.

Gonzalez-Zotelo*, 556 F.3d 736, 740-41 (9th Cir. 2009) (explaining, citing to *Miller*, that the

"district court, like this panel, was bound to follow the reasoning of [prior circuit authority]

unless it had been 'effectively overrule[d]' or was 'clearly irreconcilable' with a case from the

relevant court of last resort"); *see also Miller*, 335 F.3d at 899. Fireman's Fund contends that

these cases only permit a district court to reject a prior circuit opinion "when there is a United

States Supreme Court decision or state supreme court decision (on state law) that conflicts." (Pls.'

Reply (#562) 6.) "Otherwise, the panel decision is binding until overruled by the Ninth Circuit *en

banc*." (*Id.* at 6-7.)

###### A.    *Closely Related But Not Identical*

First, I briefly note that *Miller* instructs district courts and three-judge panels regarding an

inconsistent decision[1] "on a closely related, but not identical issue." 335 F.3d at 899. Here, I am

faced with directly competing answers to a specific and narrow question of state law statutory

---

[1] On these facts, I am not even attempting to decipher "reasoning or theory" of two
decisions, but merely two relatively straightforward holdings. While each court employed
reasonable methods of statutory interpretation, they came to precisely opposite conclusions. This
is unlike the scenario in *Miller*, where the Supreme Court's "approach" to absolute immunity was
inconsistent with, but did not directly contradict, the "reasoning" of related Ninth Circuit
precedent. 335 F.3d at 892.

PAGE 4 - OPINION AND ORDER

interpretation—whether ORS 742.061(1) authorizes attorney fees in an equitable contribution

action brought by one liability insurer against another. Fireman's Fund argues that the plaintiff in

*Underwriters* was not necessarily seeking statutory fees under the Environmental Cleanup

Assistance Act ("ECAA"), but I note that the plaintiff in *Webb* was not seeking statutory fees

under ECAA, either. The question is not whether the issue in <u>this</u> case is closely related or

identical to *Underwriters*, but rather whether the issue in *Underwriters* was closely related or

identical to the issue in *Webb*, such that the Oregon Court of Appeals effectively overruled the

holding in *Webb*. Fireman's Fund does not argue that the issues in *Underwriters* and *Webb* were

not identical. Even if the issues were closely related, but not identical, I find that the holding in

*Underwriters* effectively overrules, and is clearly irreconcilable with, *Webb*.

> **B.    *State Court Decision as Authoritative***

Both Supreme Court and Ninth Circuit caselaw establish that a state appellate court

decision can be binding precedent on a federal court of any level. The Supreme Court described

the authority of a state appellate court extensively in *West v. Am. Telephone & Telegraph Co.*,

311 U.S. 223 (1940). In *West*, the Court initially confirmed that "to avoid the maintenance within

a state of two divergent or conflicting systems of law," federal courts must apply state law in

cases of diversity. *Id.* at 236 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). "That object

would be thwarted if federal courts were free to choose their own rules of decision whenever the

highest court of the state has not spoken." *Id.* The Court explained that "[a] state is not without

law save as its highest court has declared it." *Id.* Therefore,

> Where an intermediate appellate state court rests its considered judgment
> upon the rule of law which it announces, it is a datum for ascertaining state law
> which is not to be disregarded by a federal court unless it is convinced by other

persuasive data that the highest court of the state would decide otherwise.

*Id.* at 237. The state rule as defined by the state courts is authoritative, despite "however much the state rule may have departed from prior decisions of the federal courts." *Id.* This rule and analysis applies equally in the Ninth Circuit. *See generally, Munson*, 522 F.3d at 1002-03; *In re Kirkland*, 915 F.2d at 1239. Therefore, even the Ninth Circuit is bound by a decision regarding state law from the Oregon Court of Appeals, absent a contrary decision from the Oregon Supreme Court or "convincing evidence" that it would decide the issue differently. *See Munson*, 522 F.3d at 1002; *see also In re Watts*, 298 F.3d 1077, 1082 (9th Cir. 2002) ("We are bound to follow [decisions from the state appellate court] absent convincing evidence that the [state supreme court] would reject the interpretation of [the state statute at issue] . . . .").

### C.    *Court of Last Resort*

In addition to often providing binding authority, a state appellate court decision may also constitute a ruling from the "relevant court of last resort" in certain circumstances. *See Gonzalez-Zotelo*, 556 F.3d at 741. At least when the parties involved in the state appellate court decision decline to seek review from the state's highest court, or when the state supreme court denies discretionary review, the appellate court functions as a court of last resort—in part because there is no imminent ruling on the issue from the state supreme court and in part because the Ninth Circuit itself is likely bound by the decision. For example, in *West*, Justice Stone noted that the Ohio Supreme Court denied the petitioners' request for review following the decision from the court of appeals. 311 U.S. at 232-33. Even though it was conceivable that the Ohio Supreme Court may modify the rule at issue, "[i]n the meantime the state law applicable to these parties and in this case has been authoritatively declared by the highest state court in which a decision

could be had." *Id.* at 238. Even *Miller*, the case that clarified when a district court is free to reexamine the holding of a prior panel, held that a prior circuit opinion should be rejected when its reasoning is "irreconcilable with the reasoning or theory of intervening *higher authority*." 335 F.3d at 893 (emphasis added). As described above, a decision from a state court of appeals can be authoritative and binding on this Court and the Ninth Circuit.

Here, Fireman's Fund and North Pacific were not involved in the *Underwriters* case, but the parties to that case chose not to seek review from the Oregon Supreme Court. I cannot know when the Oregon Supreme Court may ever take up this precise issue. Fireman's Fund has not requested certification to the Oregon Supreme Court, and certification does not appear to be proper under *Western Helicopter Services, Inc. v. Rogerson Aircraft Corp.*, 811 P.2d 627, 630 (Or. 1991) (finding that a certified question must meet five criteria, one of which is that there must be no controlling precedent in the decisions of the Oregon Supreme Court *or* the Oregon Court of Appeals). Therefore, the decision in *Underwriters* qualifies, for my purpose here, as a ruling from a higher authority, or the highest state court in which a decision will be had, at least for the time being.

### D.    *Circumstances of This Case*

Finally, I note that the cases cited by Fireman's Fund in its argument that this Court may not follow *Underwriters* are distinguishable. For example, *Miller* addressed the "scope of absolute immunity [in a § 1983 case]," an issue of federal law that did not involve state court decisions at all. 335 F.3d at 892. *Gonzalez-Zotelo* addressed whether a judge could disagree with federal Guidelines sentencing policy, another issue of federal law without regard to state cases. 556 F.3d at 738. Plaintiffs direct the Court to language in *Brewster v. County of Shasta*, 112 F.

Supp. 2d 1185 (E.D. Cal. 2000), in which the district court analyzed whether a county official

was actually a policymaker for the state, a determination that comes from state law, in a federal §

1983 claim. In *Brewster*, the court stated, in a footnote, that state court of appeal opinions are

"merely" data to determine how the state supreme court would rule, and that a "conflicting

decision of the Ninth Circuit obligates adherence by this court to the Circuit's decision and

rejection of the non-binding [state court] precedent." 112 F. Supp. 2d at 1188 n.5. I note that the

district court relied on a 1983 Third Circuit opinion in support of this assertion, and that the

*Brewster* case was decided before *Miller*. And, as described in the body of the opinion, the

district court felt compelled to follow Ninth Circuit law because the issue of "whether California

county sheriffs, when investigating crimes, are county or state officials under California law is

*unsettled*" and had not been address by California courts "with a single voice or a single answer."

*Id.* at 1188, 1190 (emphasis added).

　　　Fireman's Fund also discusses *Munson*, which primarily turned on interpretation of a

California state discrimination statute. While Ninth Circuit precedent interpreting the statute held

one way, a "California Court of Appeal decision to the contrary" was issued thereafter. *Munson*,

522 F.3d at 1000 n.1. A previous California Supreme Court decision addressed nearly the same

issue, and reached a different result, but was issued before the relevant statute was amended. The

Ninth Circuit panel expressed "doubt about whether the California Supreme Court would follow

[the appellate court's decision]" and chose to certify a question to the California Supreme Court.

*Id.* at 1002. Here, the Oregon Supreme Court has not yet spoken on this issue. Fireman's Fund

does argue, as described below, that the Oregon Supreme Court is likely to disagree with

*Underwriters*, but I find that to be a separate question as to the extent or weight of the cases's

PAGE 8 - OPINION AND ORDER

authority, not whether this Court is bound, as a matter of law, to *Webb*.

## II.    Would the Oregon Supreme Court Decide Differently?

The analysis above is meaningless, however, if there exists convincing evidence that a state supreme court would decide the issue differently than the state appellate court, thereby negating the binding nature of the appellate decision. Fireman's Fund first argues that, by its terms, ORS 742.061(1) applies to its equitable contribution action against North Pacific. (*See* Pls.' Reply (#562) 1.) Plaintiffs discuss the purpose of the statute, as described by Oregon courts, as encouraging settlement of claims without litigation and to reimburse successful plaintiffs' attorney fees. (*Id.* at 1 (citing *Heis v. Allstate Ins. Co.*, 436 P.2d 550 (Or. 1968)).) In response to this argument, I simply note that the task of this Court is not to begin statutory interpretation anew, but rather to determine which of two competing interpretations controls in this case.

Fireman's Fund cites Oregon Supreme Court cases describing that "proof of loss" is not as narrowly defined as it might otherwise be in the insurance industry, but instead applies to any "event or submission" that "would permit an insurer to estimate its obligations." (*Id.* at 2 (citing *Parks v. Farmers Ins. Co.*, 227 P.3d 1127 (Or. 2009) (finding that the oral statement of an insured qualifies as proof of loss).) The cases cited, however, did not involve competing insurance companies or equitable contribution claims, but rather defined the scope of an insured's proof of loss. I am unable to view these two cases cited by plaintiffs as convincing evidence that the Oregon Supreme Court would expand the concept of proof of loss further, to encompass a liability insurer plaintiff pursuing an equitable contribution claim.

Plaintiffs also point to two Oregon Court of Appeals cases that allowed an insurer to recover fees under ORS 742.061(1) in cases where the insurer brought a claim as the subrogee or

PAGE 9 - OPINION AND ORDER

assignee of the insured's interests. (*Id.* at 2 (citing *Sch. Dist. No. 1, Multnomah Cnty. v. Mission Ins. Co.*, 650 P.2d 929 (Or. 1982) (subrogation claim); *Fisk v. Dairyland Ins. Co.*, 601 P.2d 868 (Or. 1979) (assignment claim).) I note that these are Oregon Court of Appeals cases, however, and do not provide any evidence, let alone convincing evidence, that the Oregon Supreme Court would decide this issue differently.

Finally, Fireman's Fund argues that the ability of a judgment creditor, under ORS 742.031, to pursue a claim against an insurer and also recover attorney fees demonstrates that ORS 742.061(1) is not limited to insureds. (Pls.' Reply (#562) 3 (citing *Hardware Mut'l Cas. Co. v. Farmers Ins. Exchange*, 474 P.2d 316 (Or. 1970) (holding that the attorney fee statute applies in declaratory judgment actions); *Denley v. Or. Auto. Ins. Co.*, 47 P.2d 946 (Or. 1935) (holding that the attorney fee statute applies in a case "prosecuted on a contingent fee").) Neither of these cases discussed whether a successful plaintiff may recover attorney fees merely on the basis of a statutory claim, rather than a common law claim. While they may provide support to an argument or analogy for plaintiffs, I find that these cases fall short of providing convincing evidence that the Oregon Supreme Court would disagree with the *Underwriters* decision by the Oregon Court of Appeals. Therefore, in light of the analysis above that counsels me to view the Oregon Court of Appeals's *Underwriters* decision as authoritative and the absence of convincing evidence that the Oregon Supreme Court would decide the issue differently, I find that Fireman's Fund is not permitted to recover attorney fees under ORS 742.061(1).

### III.   Bill of Costs

Separately, plaintiffs seek to recover their costs in this action. Pursuant to Federal Rule of Civil Procedure ("FRCP") 54(d), a prevailing party may recover costs as listed in 28 U.S.C. §

PAGE 10 - OPINION AND ORDER

1920:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; and
> (5) Docket fees under section 1923 of this title;

Fireman's Fund submitted a Bill of Costs (#531) in the amount of $118,708.00, along with extensive documentation in support. North Pacific filed objections (#553), contending that: (1) certain costs should not be allowed based on inadequate description, or because photocopying costs are plainly excessive; (2) claimed costs include impermissible multiple or duplicative copies; (3) claimed shipping and postage costs are unrecoverable; and (4) plaintiffs provided no justification for expedited delivery costs for subpoenas and transcripts. (Defs.' Resp. (#553) 2, 7.) As described by Fireman's Fund, defendants leave $32,642.56 of the costs unchallenged, and challenge the remaining $86,065.44. (Pls.' Reply (#568) 2.) I review each category of challenged costs below.

### A.    *Copying Costs*

North Pacific challenges, in particular, "the costs associated with copying, binders, and tabs for the 2010 trial" as excessive because plaintiffs only submitted forty-four binders for trial. (Defs.' Resp. (#553) 6 (challenging $34,285.66).) I accept plaintiffs' response that several sets of these binders were required (defendants' copy, judge's copy, clerk's copy), and I agree with Fireman's Fund that "any reduction in costs should be no more than 53%" of the trial fees, based on the number of binders actually used. (Pls.' Reply (#568) 3.) Therefore, I deduct $18,171.40 from the Bill of Costs.

PAGE 11 - OPINION AND ORDER

Defendants also challenge $37,918.00 in costs as lacking adequate descriptions. (Defs.' Resp. (#553) 3-4.) Fireman's Fund makes a number of specific arguments in reply to roughly $15,000 in challenged costs, along with additional documentation. (Pls.' Reply (#568) 5-7.) Plaintiffs also urge me to consider that "there were simply too many documents copied [over] a period of 7 years for counsel to track and report the nature of each copy on a per copy basis." (*Id.* at 7.) They cite to a case from this District with a similarly voluminous paper trail, where Judge King held that it was impossible for counsel to track the nature of each copy or for the court to review each copy charge. *See Adidas Am., Inc. v. Payless Shoe Source, Inc.*, Nos. CV-01-1655-KI, CV-03-1116-KI, 2009 WL 302246, at *4 (D. Or. Feb. 9, 2009). There, the court relied on counsels' statements explaining that the copying costs were necessarily incurred. *Id.* Similarly, I have received a glimpse of the exorbitant amount of paper required during the course of this litigation. Having received no reason to doubt the truthfulness of counsels' assertions that the copies charged were necessary, I do not deduct these costs from plaintiffs' Bill of Costs.

**B.**      ***Duplicative Copies and Scanning***

North Pacific challenges $2456.91 and $9379.01 as duplicative and for improper scanning and OCR costs, respectively. (Defs.' Resp. (#553) 5.) I find that multiple copies of the document at issue were appropriately made for the Court and for defendants, and that the scanning and OCR of documents was helpful throughout the litigation, not just for plaintiffs' benefit. (*See* Pls.' Reply (#568) 3-4.) Therefore, I do not deduct these costs.

**C.**      ***Shipping and Postage***

North Pacific challenges $1373.21 in shipping and postage costs. (Defs.' Resp. (#553) 7.) Fireman's Fund rebuts $100 for court reporters' charges associated with delivery of transcripts.

PAGE 12 - OPINION AND ORDER

(Pls.' Reply (#568) 5.) The remainder appears to be unrebutted, so I deduct $1273.21 from the Bill of Costs.

    **D.**    ***Expedited Service of Subpoenas***

    North Pacific finally challenges the rush or expedite fees for service of some subpoenas. (Defs.' Resp. (#553) 7.) I deduct the premium for rush service, $500. (*See* Pls.' Reply (#568) 4.)

    In sum, I award Fireman's Fund's costs as follows:

| | |
|---|---|
| Request: | $118,708.00 |
| Less: | $18,171.40, $1273.21, $500.00 |
| Total: | $98,763.39 |

## CONCLUSION

    For the reasons given above, I find that the decision of the Oregon Court of Appeals in *Underwriters* informs construction of ORS 742.061(1), rather than the Ninth Circuit's decision in *Webb*. In light of *Underwriters*'s holding that ORS 742.061(1) does not authorize attorney fees in an equitable contribution action between liability insurers, I must DENY plaintiffs' Motion for Attorney Fees (#532). I do, however, award plaintiffs' Bill of Costs (#531) in the amount of $98,763.39.

    IT IS SO ORDERED.

    DATED this  _31st_  day of August, 2010.

                   /s/ Michael W. Mosman
                   MICHAEL W. MOSMAN
                   United States District Judge

PAGE 13 - OPINION AND ORDER